# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BARBACCIA, | )<br>) |
| *Plaintiff*, | )<br>) No. 19 C 5410 |
| v. | )<br>) Judge Virginia M. Kendall |
| VILLAGE OF LOMBARD, et al., | )<br>) |
| *Defendants*. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Village of Lombard Police Officers John Latronica and Garret Klunk pulled over, arrested, and detained Plaintiff Christopher Barbaccia for multiple motor-vehicle violations under Illinois law. Barbaccia contends that he was driving a low-speed gas bicycle, which is not a motor vehicle, and therefore the officers lacked probable cause to seize him for any motor-vehicle infractions. He has brought the instant suit, claiming that the defendant-officers violated his Fourth Amendment rights and caused him emotional distress. He also brings a claim against the Village of Lombard pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), alleging that the constitutional violations he suffered were part of a widespread, unwritten practice within the Village of directing officers to arrest civilians without a legal basis.

The Village and the defendant-officers (collectively "Defendants") have moved to dismiss Barbaccia's complaint, arguing that he has failed to state a claim on the

federal counts and that his state-law claim is time-barred. For the following reasons, the Court agrees that the *Monell* and state-law claims should be dismissed. Barbaccia's Fourth Amendment claims against the defendant-officers, however, may proceed.

## **BACKGROUND**

The following factual allegations are taken from Barbaccia's complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On or around August 11, 2017, Barbaccia was operating a 48-cc motorized bicycle when he was pulled over by Officer Latronica. (Dkt. 1 ¶¶ 10–11, 14–15). At the time, Barbaccia was travelling "approximately 20 mph." (*Id.* at ¶¶ 10–12). When Barbaccia asked Officer Latronica why he had been pulled over, Officer Latronica stated only that Barbaccia could be cited for "numerous violations" without specifying any in particular. (*Id.* at ¶ 16). When Officer Latronica asked Barbaccia to produce his driver's license and proof of insurance, Barbaccia attempted to tell him that he was not required to have a license to drive the motorized bicycle. (*Id.* at ¶¶ 17–21). In response, Officer Latronica threatened to arrest Barbaccia. (*Id.* at ¶¶ 17–21).

Officer Latronica looked up Barbaccia's driver's license and determined that it had been suspended. (*Id.* at ¶ 23). Shortly thereafter, another officer, Officer Klunk, arrived on scene. (*Id.* at ¶ 25). Barbaccia again attempted to explain to both officers that he did not need a driver's license to operate his motorized bike. (*Id.* at ¶ 26). Despite his protestations, the officers arrested Barbaccia for driving with a suspended

license, operating an uninsured vehicle, failing to have registration plates, and driving on the shoulder. (*Id.* at ¶¶ 3, 28). Barbaccia's bike was seized and he was taken into custody. (*Id.* at ¶¶ 29–30). He was later released on a recognizant bond. (*Id.* at ¶ 30). Although Barbaccia was prosecuted, he was ultimately cleared of charges in early 2018. (*Id.* at ¶¶ 31–32).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Barbaccia alleges five counts. Counts One, Two, and Five allege against the defendant-officers violations of Barbaccia's Fourth Amendment rights, pursuant to 42 U.S.C. §§ 1983, 1988, for unlawful arrest, illegal search and seizure, and false imprisonment, respectively. Barbaccia alleges in Count Three a *Monell* claim against

the Village of Lombard. And in Count Four, he alleges a state-law claim for intentional infliction of emotional distress ("IIED"). Defendants have moved to dismiss all five counts.

### A. Fourth Amendment Claims

Defendants move to dismiss Counts One, Two, and Five on the grounds that the defendant-officers had probable cause to seize Barbaccia, and that, even if they did not have probable cause, they are entitled to qualified immunity.

In Illinois, a low-speed gas bicycle is "[a] 2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 625 ILCS 5/1-140.15. Barbaccia alleges that he was "accused of" multiple violations pertaining to operating a motor vehicle (Dkt. 1 ¶ 3), despite the fact that his low-speed gas bicycle is not a motor vehicle. *See* 625 ILCS 5/1-146.

Defendants point out that Barbaccia has alleged that he was travelling "approximately 20 mph." (Dkt 1 ¶ 12). Low-speed gas bicycles are only exempted from the motor-vehicle definition if they travel below 20 mph. Therefore, Defendants say, Barbaccia's admission as to his speed vitiates any argument that the officers lacked probable cause to consider his bicycle a motor vehicle and to pull him over and arrest him. *See Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 350 (7th Cir. 2019) ("Probable cause exists where the police officer is aware of facts and circumstances sufficient to warrant a prudent man in believing that the petitioner had committed or was

committing an offense." (internal quotation marks omitted)). And if there was probable cause for his seizure, his Fourth Amendment claims fail. *Id.* (existence of probable cause defeats a Fourth Amendment claim).

The Court disagrees with this argument. At this stage, we accept Barbaccia's allegations as true and draw reasonable inferences in his favor. He has alleged only that he was travelling *approximately* 20 miles per hour, which, at this low speed, leaves room for the inference that he was travelling below that. He could have, for instance, been travelling at 15 miles per hour. Nor do we know at this point how the officers determined his speed or whether they had grounds to believe he was travelling at 20 miles per hour or more. *Cf. Lund v. City of Rockford*, No. 17 C 50035, 2019 WL 1773354, at *3 (N.D. Ill. Apr. 23, 2019) (noting that to have probable cause, officers must have reasonably determined that the bicycle was going at least 20 miles per hour, and probable cause existed because officers paced the bicycle on a flat surface and determined it was going over 20 miles per hour). Without more, we cannot conclude from the complaint alone that the officers had probable cause to stop Barbaccia on the grounds that he was driving a motor vehicle.

Defendants argue in the alternative that the defendant-officers are entitled to qualified immunity. Police officers are entitled to qualified immunity "for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'" at the time of the conduct in question. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1016 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (per curiam)). "[Q]ualified immunity provides shelter for officers

who have 'arguable probable cause' to arrest—i.e., those officers that reasonably but mistakenly believe they have probable cause." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). "Though they may appear to be the same, the probable-cause and arguable-probable-cause inquiries are different. . . . An arrest without probable cause is a violation of a constitutional right, whereas an arrest without arguable probable cause is a violation of a 'clearly established' constitutional right." *Id.* A qualified-immunity defense is typically presented at the summary-judgment stage but can also be presented in a motion to dismiss. *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997).

As noted above, at this point, the Court has limited facts from which to assess what actually happened. Further, because we are at the motion-to-dismiss stage, the Court makes reasonable inferences in favor of Barbaccia. The complaint provides only that Barbaccia was travelling somewhere in the ballpark of 20 miles per hour and that he attempted to explain to the officers that his bicycle did not qualify as a motor vehicle. 625 ILCS 5/1-140.15 is clear as to what constitutes a low-speed gas bicycle,[1] and Illinois courts had, prior to Barbaccia's arrest, reiterated the requirements of that statute. *See e.g.*, *People v. Frazier*, 62 N.E.3d 1081, 1086 (Ill. App. Ct. 2016); *People v. Grandadam*, 44 N.E.3d 611, 615 (Ill. App. Ct. 2015). Given the dearth of information and the fact that the Court construes inferences in Barbaccia's favor,

---

[1] Since Barbaccia's arrest, the Supreme Court of Illinois has stated that 625 ILCS 5/1-140.15 "both provides sufficient notice of what it prohibits to individuals of ordinary intelligence and supplies law enforcement officers with reasonable standards to prevent arbitrary enforcement." *People v. Plank*, 106 N.E.3d 995, 999 (Ill. 2018).

the Court cannot, at this point, conclude that the officers reasonably, even if mistakenly, believed they had probable cause to stop, arrest, and detain Barbaccia. The Court therefore declines to grant qualified immunity on the grounds of arguable probable cause.

That being said, in some cases, even though a grant of qualified immunity is not appropriate at an early stage in the case, after discovery, facts may emerge that would make a grant of qualified immunity appropriate. *See Bruce v. Guernsey*, 777 F.3d 872, 879 (7th Cir. 2015). Defendants, therefore, are not precluded from again moving for qualified immunity once more facts come to light.

**B. *Monell* Claim**

Pursuant to *Monell*, "[a] local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

In Count Three, Barbaccia brings a *Monell* claim against the Village of Lombard. He alleges that the Village trains, encourages, and directs its police officers to engage in impermissible searches and seizures lacking probable cause, and/or condones such behavior. (Dkt. 1 ¶ 55).

As a preliminary matter, Barbaccia styles his claim as one for failure to train or supervise. In such claims, under limited circumstances, a municipality's failure

to train or supervise its employees may "rise to the level of an official government policy for purposes of § 1983," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), if the failures amount to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019). In other words, a municipality may be liable because it fails to implement training despite an obvious need for it. *City of Canton*, 489 U.S. at 390. Barbaccia's complaint, however, alleges not a lack of training, but instead an intentional practice of teaching and encouraging officers to engage in unconstitutional behavior.[2] It is an improper-training rather than a failure-to-train claim, and therefore this Court does not assess it under the framework applicable to the latter.

The Court now turns back to what Barbaccia has, in fact, alleged, which is "a common, unwritten practice put in place by the [municipality] that nonetheless has the force of law." *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727–28 (7th Cir. 2014); *see also* Dkt. 1 ¶ 56 (alleging an "unwritten policy, custom, or pattern of practice"). The constitutional violations he endured, Barbaccia says, were the result of the Village's unwritten practice of indiscriminately stopping people without probable cause. (Dkt. 1 ¶¶ 50-58).

---

[2] In his response to the motion to dismiss, Barbaccia vaguely makes reference to an argument that the Village's failure to supervise the defendant-officers was the proximate cause of his injuries. Dkt. 21 at 8. But such an argument is untenable even in the failure-to-train context. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392. *Monell* claims, however, cannot be based upon this type of "*de facto respondeat superior* liability." *Id.*

Although there is no heightened pleading standard for such a claim and a plaintiff need not provide examples of "every other or even one other individual" who suffered as a result of the unwritten practice, *see White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016), he must "plausibly allege that such examples exist." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). For example, in *White*, although the plaintiff did not identify other individuals who had been harmed, he did allege that his injury resulted from the use of a standard but inadequate complaint form, one that was regularly used by police. 829 F.3d at 840, 844.

Barbaccia's complaint is entirely devoid of factual allegations that would allow this Court to draw the reasonable inference that the Village had any widespread unwritten policy or custom. Barbaccia concedes as much, as he notes in his response to the motion to dismiss that he "can only point to his own individual experiences." (Dkt. 21 at 8). And while that might be fine if he provided facts that would suggest others may have suffered the same harm, he has not done so. Yet he requests that the Court allow him to go on a fishing expedition because "discovery may produce additional instances of misconduct to support *Monell* liability." (Dkt. 21 at 8). That is not how *Monell* claims work.

In sum, Barbaccia has essentially claimed that the Village is directing the police to violate the constitution. That is a quite an accusation to level, and Barbaccia has alleged no factual content that would move this bold claim from merely conceivable to plausible, as is required under well-established pleading standards. *See*

*McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680). As such, he has failed to state a viable *Monell* claim.

### C. IIED Claim

Under Illinois law, the statute of limitations for an IIED claim against governmental entities and their employees is one year. 745 ILCS 10/8-101(a). And "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Defendants point out that the arrest here occurred on or about August 11, 2017, but Barbaccia did not bring suit until August 10, 2019, past the one-year period. Therefore, Defendants argue, Barbaccia's IIED claim is time-barred. Barbaccia, for his part, has offered no response to this argument. The Court agrees with Defendants and Count Four is therefore dismissed with prejudice as time-barred. *See also Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (claims not addressed in response to a motion to dismiss are waived).

### CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The Court denies the motion as to Counts One, Two, and Five, although Defendants are not precluded from again advancing a qualified-immunity argument once more facts have been developed. The Court grants the motion as to Counts Three and Four. Barbaccia has failed to state a *Monell* claim in Count Three, and this claim is dismissed without prejudice. Barbaccia has failed entirely to respond to the argument that his IIED claim in Count Four is time-barred, and this claim is dismissed with prejudice.

Barbaccia is granted leave to amend his complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

                                                        _____
                                                        Virginia M. Kendall
                                                        United States District Judge

Date: January 29, 2020